## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**DEMESIO E. WILSON,**

     **Plaintiff,**

**vs.**                       **Case No. 4:17cv253-RH/CAS**

**JULIE L. JONES, CORIZON
HEALTH, INC., V. CRUSE,
LPN, and A. KIRKLAND, ARNP,**

     **Defendants.**
_____/

## <u>RECOMMENDED ORDER</u>

On June 2, 2017, Plaintiff, a prisoner in the custody of the State of
Florida Department of Corrections (DOC), proceeding pro se, filed a
complaint against Defendants pursuant to 42 U.S.C. § 1983, alleging denial
of medical care in violation of his rights under the Eighth Amendment.  ECF
No. 1.  Defendants Corizon, Cruse, and Kirkland filed a motion to dismiss
or for summary judgment.[1]  ECF No. 37.  Defendant Jones filed a notice of
adoption and motion to dismiss.  ECF No. 38.  Plaintiff did not file a reply
even though he was given leave to do so.  ECF No. 46.

_____

[1] Defendants filed a motion to dismiss or for summary judgment, which this Court
determined would be treated only as a motion to dismiss.  ECF No. 43.

**The Complaint**

Plaintiff, alleges that on January 16, 2014, when he was an inmate at Wakulla Correctional Institution, he was attempting to exit his bunk and fell, injuring his neck and spine.  ECF No. 1 at 2.  He alleges that when he informed an unknown dorm officer about the fall and his pain, he was denied permission to go to the medical clinic.  *Id.*  Plaintiff alleges that the denial of permission was based on the officer's opinion that the fall did not constitute a true medical emergency.  He alleges that the officer's decision was based on the DOC's custom of allowing corrections officers to decide what is a medical emergency without any medical examination.  *Id.*  Plaintiff further alleges that, on that same date, he again unsuccessfully requested permission from a different dorm officer to attend the medical clinic.  *Id.*

Plaintiff alleges that on January 20, 2014, without having been allowed to go to the clinic, and "being forced to work as part of the sanitation crew which was [Plaintiff's] assigned job that further complicated his injuries," he was told that he could not miss any work days without written orders from the medical clinic.  He alleges he was told that if he missed work without authorization he would be placed in confinement.  *Id.* at 3.  Plaintiff alleges he was still in extreme pain.  *Id.*  Plaintiff alleges that the assigned dorm sergeant granted permission for Plaintiff to go the

medical clinic after observing Plaintiff's inability to get into his assigned

upper bunk.  *Id.*

Plaintiff further alleges that when he arrived at the clinic, he was seen

by Defendant Cruse, LPN, who informed him "based on policy and custom

of Florida D.O.C. and Corizon Health" that his accidental fall did not

constitute a medical emergency.  ECF No. 1 at 3.  He alleges that after

Defendant Cruse made an inadequate examination of him, he was "denied

any further assistance" and was provided only an ibuprofen.  He was told to

file a sick call request to return to the clinic if his condition worsened.  *Id.*

He alleges he would not be able to see a doctor until he had submitted

three sick call requests at the cost of $5 each.  *Id.*

Plaintiff alleges that on January 23, 2014, he required assistance of

an inmate to get to his 6 a.m. sick call appointment and was not seen by

Defendant Kirkland, ARNP, until two hours later.  *Id.*  He alleges Defendant

Kirkland admitted him to the infirmary but implied she did not believe him to

be suffering any actual pain.  *Id.*

On January 29, 2014, Defendant was seen by Defendant Kirkland,

who ordered X-rays.  *Id.*  He alleges that after reviewing the X-rays,

Defendant Kirkland informed him there was no evidence to support his

claim of injuries.  He alleges that she subsequently ordered blood tests,

urinalysis, a chest X-ray, and an MRI "because she felt that he was faking his symptoms." ECF No. 1 at 3. She also recommended he see "Dr. Shubert," whom Plaintiff describes as a neurologist.[2] *Id.* Plaintiff alleges that it is the policy and custom of Defendant Corizon that there must be a minimum of three inmate patients to see a specialist, which "is done at the expense of inmate health in order for Corizon Health Inc. to limit the number of consultations to minimize their cost for specialist[s]." *Id.*

Plaintiff alleges that on January 31, 2014, he was transported for the MRI, and on February 3, 2014, Defendant Kirkland informed Plaintiff that the MRI showed no support for his claims and that she believed he was faking. *Id.* at 3.

Plaintiff alleges that on February 5, 2014, he was unexpectedly transferred to Lake Butler Reception and Medical Center. ECF No. 1 at 4. He alleges he was seen by an unknown neurologist on March 6, 2014, and after various tests, was immediately referred to Jacksonville Memorial Hospital to be scheduled for emergency surgery "based on the severity and extent of the damage to [Plaintiff's] spine and nervous system." *Id.* On March 7, 2014, Plaintiff had the first of two surgeries. The second surgery

---

[2] Defendants describe Shubert as a Corizon utilization management team member involved in specialty consultations. ECF No. 37 at 4.

was performed on March 10, 2014.  *Id.*  He alleges he was kept at

Jacksonville Memorial Hospital for approximately two weeks for

observation and treatment, which resulted from the severity and extent of

damage to his spinal cord because of the delay in correct diagnosis.  *Id.*

Plaintiff alleges that due to Defendants' deliberate indifference to his

serious medical needs by delaying and intentionally interfering with medical

assistance and treatment, Defendants violated his rights under the Eighth

Amendment to the United States Constitution.  ECF No. 1 at 5.  He alleges

the violation caused him pain, suffering, physical injury, and emotional

distress.  He further alleges he has been and will continue to be irreparably

injured by the conduct of Defendants and seeks declaratory and injunctive

relief.  He requests the Court order Defendant Jones to cease allowing

correctional officers to deny, delay, or intentionally interfere with medical

assistance and treatment of inmates.  *Id.*  He seeks injunctive relief that

would prevent Defendant Jones and the DOC from assigning inmates 50

years of age or older, obese, or with physical disabilities to an upper bunk.

He seeks injunctive relief that would require Defendant Jones and the DOC

to properly oversee subcontracted agents that provide medical care to

ensure adequate care is provided.  He seeks an order requiring DOC to

retrofit all existing upper bunks with ladders and to require all future

correctional institutions to provide ladders for upper bunks. *Id.* Plaintiff seeks a preliminary and permanent injunction ordering Defendant Corizon to ensure that its employees meet a standard of service and are properly trained to perform the job they are assigned. ECF No. 1 at 5.

Plaintiff seeks compensatory damages in the amount of $2,500,000 against each Defendant jointly and severally, and punitive damages of $2,500,000 against each Defendant jointly and severally. *Id.* at 6. He sues each defendant in their individual and official capacities. ECF No. 1 at 1.

**Defendants Corizon, Cruse, and Kirkland's Motion to Dismiss**

Defendants Corizon, Cruse, and Kirkland move to dismiss the complaint for failure to state a claim upon which relief may be granted. ECF No. 37. Defendant Corizon, a corporation, contends that liability only attaches if an official unconstitutional policy or custom of the corporation caused the alleged deprivation and the policy was created with deliberate indifference to its known or obvious consequences. ECF No. 37 at 10-11. Corizon alleges that the allegations in the complaint are insufficient to allege a policy or custom that caused the alleged deprivation and was created with deliberate indifference.

Defendants Cruse and Kirkland contend that the allegations do not show that Plaintiff had a serious medical need that was disregarded and

went untreated by them.  ECF No. 37 at 19.  Defendants also contend that

complaints of delay in examination and treatment or allegations of

negligence do not reach the level of deliberate indifference.  *Id.* at 18-21.

**Defendant Jones' Motion to Dismiss**

Defendant Jones adopts the motion to dismiss filed by Corizon,

Cruse, and Kirkland, and moves to dismiss on the additional grounds of

Eleventh Amendment immunity and failure to state a cause of action based

on *respondeat superior*.  ECF No. 38 at 1, 3-10.  Jones contends that to the

extent Plaintiff is suing her in her official capacity, she is entitled to

immunity for all claims for damages.  *Id.* at 3-4.  She further contends that

to the extent Plaintiff is suing on the basis of *respondeat superior* or

vicarious liability, with no claim of personal participation or causal

connection, the claims must be dismissed against her.  Defendant Jones

contends that the allegations do not demonstrate a widespread abuse,

custom, or policy resulting in a violation of Plaintiff's constitutional rights or

any direction from Jones to act unlawfully.  *Id.* at 7.  Jones contends that

allegations against unnamed officers and the co-defendants cannot

establish supervisory liability on her behalf and, at most, allege only

negligence in the training and supervision of the individuals.  *Id.* at 8.

Jones contends that this alone does not establish a claim of deliberate

indifference, showing subjective knowledge of a serious risk of harm,

disregard of that risk, and conduct more than negligence.

**Standard of Review**

Whether a complaint should be dismissed pursuant to Fed. R. Civ. P.

12(b)(6) for failing to state a claim upon which relief can be granted

requires the Court to determine if the plaintiff has alleged enough plausible

facts to support the claim stated. Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 561 (2007) (retiring the standard from Conley v. Gibson, 355 U.S. 41,

45-46 (1957)). "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to "state a claim to relief that is

plausible on its face." Ashcroft v. Iqbal, 550 U.S. 662, 678 (2009) (quoting

Twombly, 550 U.S. at 570). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Iqbal,

556 U.S. at 678 (citing Twombly, 550 U.S. at 556); *see also* Speaker v.

U.S. Dep't of Health, 623 F.3d 1371, 1380 (11th Cir. 2010). "The

plausibility standard" is not the same as a "probability requirement," and

"asks for more than a sheer possibility that a defendant has acted

unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). A

complaint that "pleads facts that are 'merely consistent with' a defendant's

liability," falls "short of the line between possibility and plausibility."  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests.  Swierkiewicz v. Sorema, 534 U.S. 506, 512 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions.").  Pro se complaints are held to less stringent standards than those drafted by an attorney.  Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-521 (1972)).  However, the requirements of Rule 8 do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Iqbal, 556 U.S. at 678-79.

A complaint does not need detailed factual allegations to survive a motion to dismiss, but Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  556 U.S. at 678.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' "  Id. (quoting Twombly, 550 U.S. at 555).  Thus, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."  Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003).

Under the "two-pronged approach" when considering a motion to dismiss under Rule 12(b)(6), the Court first considers whether the complaint presents "well-pleaded factual allegations," which are entitled to a presumption of truth, or whether the complaint merely asserts "legal conclusions," which "are not entitled to the assumption of truth." *Id.* at 679. If the complaint contains factual allegations that are well pled, the second step is to consider whether the non-conclusory factual allegations "plausibly give rise to an entitlement to relief." *Id.* If so, a motion to dismiss should be denied. *Id.* at 680 (citations omitted).

**Analysis**

Deliberate indifference to the serious medical needs of sentenced prisoners constitutes unnecessary and wanton infliction of pain and violates the Eighth Amendment's prohibition of cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* The plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Not every claim by a prisoner that he has not received adequate

medical treatment states a violation of the Eighth Amendment.  McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999) (citation omitted) (cited in Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)).  An official "acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate."  McElligott, 182 F.3d at 1255 (quoting Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 (11th Cir. 1997), *overruled on other grounds by* LeFrere v. Quezada, 588 F.3d 1317, 1318 (11th Cir. 2009)); *see also* Mandel v. Doe, 888 F.2d 783, 789 (11th Cir. 1989) (holding that cursory medical care amounting to no treatment at all may amount to deliberate indifference).

In order to state a cognizable claim, the prisoner must allege acts or omissions "sufficiently harmful" to evidence deliberate indifference to serious medical need.  *Id.* at 105.  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Farrow, 320 F.3d at 1243 (quotations omitted) (quoted in Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011)).  "In either of these situations, the medical need must be 'one that, if left unattended, "pos[es] a substantial risk of serious harm." ' "  Farrow, 320 F.3d at 1243

(citation omitted); *see also* Mann v. Taser Intern., Inc., 588 F.3d 1291, 1307

(11th Cir. 2009) (same).

Proof of deliberate indifference requires a subjective component and

a showing of conscious disregard of a substantial risk of harm. Farmer v.

Brennan, 511 U.S. 825, 838-40 (1994) (citing Wilson v. Seiter, 501 U.S.

294, 298(1991)). Combining the standards from Farmer and Estelle, the

Eleventh Circuit has clarified that, ultimately, there are four requirements to

bringing an Eighth Amendment claim for the denial of medical care: "an

objectively serious need, an objectively insufficient response to that need,

subjective awareness of facts signaling the need, and an actual inference

of required action from those facts." Taylor v. Adams, 221 F.3d 1254 (11th

Cir. 2000); Farrow, 320 F.3d at 1243. To show a defendant acted with

deliberate indifference, the plaintiff must prove (1) subjective knowledge of

a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more

than mere negligence. McElligott, 182 F.3d at 1255; *see also* Harris v.

Prison Health Services, 706 F. App'x 945, 952 (11th Cir. 2017)

(unpublished) (noting a lack of clarity between the "more than mere

negligence" requirement adhered to in Melton v. Abston, 841 F.3d 1207,

1223 & n.2 (11th Cir. 2016), and the "more than gross negligence"

requirement articulated in <u>Townsend v. Jefferson Cty.</u>, 601 F.3d 1152, 1158 (11th Cir. 2010), but declining to decide the question).

## A. Defendants Cruse and Kirkland

Defendants Cruse and Kirkland contend that the allegations do not show that Plaintiff had a serious medical need that was disregarded and went untreated by them. ECF No. 37 at 19. Defendants also contend that Plaintiff's complaints relate only to delay in examination and treatment and do not reach the level of deliberate indifference. *Id.* at 20-21.

Plaintiff alleged that Defendant Cruse made an inadequate examination of him after he reported his fall and severe pain and gave him only an ibuprofen. ECF No. 1 at 3. However, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. <u>McElligott</u>, 182 F.3d at 1254. The fact that the inmate may have desired different modes of treatment does not amount to deliberate indifference. <u>Hamm v. DeKalb County</u>, 774 F.2d 1567, 1575 (11th Cir. 1985). When an inmate receives medical care, courts are hesitant to find an Eighth Amendment violation. <u>Waldrop v. Evans</u>, 871 F.2d 1030, 1035 (11th Cir. 1989).

Even assuming Plaintiff had a serious medical need based on the fact of later required surgery, Plaintiff fails to allege sufficient facts to show Cruse acted with deliberate indifference rather than negligence, in responding to it.  The allegations of the complaint and medical notes attached to it show that Cruse did not ignore Plaintiff, but examined him— although without diagnosing any spinal injury—and gave him pain medication.  For these reasons and the above-cited authorities, the complaint should be dismissed as it pertains to Defendant Cruse.

As to Defendant Kirkland, Plaintiff alleges that when he was examined by Kirkland on January 23, 2014, he was admitted to the clinic, but she did not believe his complaints.  ECF No. 1 at 3.  The documents attached to the Complaint indicate that Plaintiff was examined and complained of tingling in his arm and leg, sharp pain in his lower back, and weakness, and was unsteady.  ECF No. 1 at 8.  The examination notes attached to the Complaint indicate that Plaintiff was in no observed distress, moved his arms and hands freely, exhibited no loss of balance or tremors, and had a full range of motion.  *Id.*  The notes also indicate that Defendant Kirkland concluded that the assessment did not support Plaintiff's complaint of weakness, but he was nevertheless sent to the

infamary for further evaluation.  *Id.* at 9.  The complaint does not allege what occurred between January 23, 2014, and January 29, 2014.

Plaintiff alleges that when he saw Defendant Kirkland again on January 29, 2014, she ordered X-rays, blood tests, urinalysis, and an MRI, although he alleges she felt he was faking.  *Id.*  He alleged that Kirkland also referred him to a Dr. Shubert, although Plaintiff does not indicate if that meeting occurred.  *Id.*  The medical examination notes attached to Plaintiff's complaint show that Plaintiff was examined, that he had trouble getting on the examination table, had fine hand tremors, and was "ok" for MRI brain and chest X-ray, and urinalysis.  ECF No. 1 at 11.

Plaintiff's allegations against Kirkland allege, at most, medical negligence in waiting approximately one week to order the extensive testing.  *See* McElligott, 182 F.3d at 1254.  Moreover, Plaintiff's allegations demonstrate that despite concern that Plaintiff was malingering, Kirkland ordered a battery of tests in an attempt to diagnose Plaintiff's injury. Whether she expressed disbelief that he was in serious pain or had a serious spinal injury does not indicate, or lead to an inference, that she was deliberately indifferent to his condition in light of her actions in ordering testing.  The allegations against Defendant Kirkland are insufficient to support Plaintiff's claim that she acted with deliberate indifference to a

serious medical need.  For these reasons, the Complaint should be dismissed against Defendant Kirkland.

## B. Defendant Corizon

Defendant Corizon, a corporation, contends that liability only attaches if an official unconstitutional policy or custom of the corporation caused the alleged constitutional deprivation and the policy was created with deliberate indifference to its known or obvious consequences.  ECF No. 37 at 10-11. A prisoner may sue a governmental entity that has a custom or policy that constituted deliberate indifference to a constitutional right or caused a violation of that right.  *See* McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004).  Although Corizon "is not a governmental entity, '[w]here a function which is traditionally the exclusive prerogative of the state . . . is performed by a private entity,' that private entity, like a municipality, may be held liable under § 1983."  Ancata v. Prison Health Servs., 769 F.2d 700, 703 (11th Cir. 1985) (quoted in Fields v. Corizon Health, Inc., 490 F. App'x 174, 181-82, 185 (11th Cir. 2012) (affirming that jury could reasonably conclude that prison medical provider's policy restricting the transportation to hospitals of inmates with serious medical needs was a direct cause of Mr. Fields' injuries) (unpublished)).

Plaintiff alleges that Corizon had a policy and custom of denying an inmate access to a specialist unless he had submitted three sick call requests.  He alleges Corizon had a policy and custom that there be a minimum of three inmate patients to see a specialist, which policy and custom was at the expense of inmate health and was based on Corizon's goal of limiting the number of consultations and the costs associated with a specialist consultation.  ECF No. 1 at 3.  These allegations against Corizon, while not made in great detail, if taken as true for the purposes of the motion, are sufficient. The allegations place Corizon on notice of the claim and sufficiently allege that a policy and custom harmed Plaintiff and was created with deliberate indifference to the known and obvious consequences.

The Court is ruling only on the Defendant's motion to dismiss at this time.  *See* ECF No. 43.  A motion to dismiss is not the vehicle by which the truth of a factual allegation should be judged.  Instead, "federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later."  Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168-69 (1993).  Because the allegations against Corizon state a claim, the motion to dismiss Corizon should be denied.

## C. Defendant Jones

Defendant Jones adopts the motion to dismiss filed by Corizon, Cruse, and Kirkland, and also moves to dismiss on the additional grounds of Eleventh Amendment immunity and failure to state a cause of action based on *respondeat superior*.  ECF No. 38 at 1, 3-10.

Jones contends that to the extent Plaintiff is suing her in her official capacity, she is entitled to immunity for all claims for damages.  *Id.* at 3-4. Under the Eleventh Amendment, state officials sued for damages in their official capacity are immune from suit in federal court.  Jackson v. Georgia Dep't of Transp.*,* 16 F.3d 1573, 1575 (11th Cir. 1994).  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  However, the Eleventh Amendment is no bar where (1) the state consents to suit in federal court, or (2) where congress has abrogated the state's sovereign immunity.  Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990).  In this case, neither exception applies.  Plaintiff's claims for monetary damages against Defendant Jones in her official capacity should be dismissed.

Nor can Jones' liability for constitutional deprivation be based on the theory of *respondeat superior*.  *See* Craig v. Floyd County, Ga., 643 F.3d

1306, 1310 (11th Cir. 2011).  To hold the Secretary of DOC liable under

§ 1983, Plaintiff must show that Jones personally participated or directed

subordinates in the unconstitutional conduct, or that DOC had a custom or

policy of which she was aware which was the moving force behind the

constitutional violation.  *See* Campbell v. Johnson, 586 F.3d 835, 840 (11th

Cir. 2009); Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Circ. 2003).

Plaintiff has not stated a plausible Eighth Amendment claim against

Defendant Jones.  First, he has not alleged facts tending to show that

Jones personally participated or personally directed subordinates in any

unconstitutional conduct.  Second, Plaintiff has not alleged facts showing a

longstanding and widespread practice resulting in unconstitutional conduct.

"[A] longstanding and widespread practice is deemed authorized by the

policymaking officials because they must have known about it but failed to

stop it."  Vasquez v. City of Miami Beach, 895 F. Supp. 2d 1275, 1278

(S.D. Fla. 2012) (quoting Brown v. City of Fort Lauderdale, 923 F.2d 1474,

1481 (11th Cir. 1991)).

A liberal reading of Plaintiff's allegations discloses that Plaintiff's claim

against Defendant Jones is in essence based on the premise that DOC's

policy of allowing correctional officers, without medical training, to decide if

an injury is an emergency caused an unnecessary and harmful delay in his

medical treatment.  Supervisory liability over the acts of subordinates may occur if there was a fundamental lack of training of the subordinates that resulted in the alleged unconstitutional violation.  However, a policy-making authority's liability for a violation of individual rights "is at its most tenuous" when the claim turns on a failure to train employees.  Connick v. Thompson, 563 U.S. 51, 61 (2011) (citing Oklahoma City v. Tuttle, 471 U.S. 808, 822-23 (1985)).

To create liability, the failure to train "must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' " Connick, 563 U.S. at 51 (quoting Canton v. Harris, 489 U.S. 378, 388 (1989)).  The supervisory authority must have sufficient notice that there is a specific need to provide training in a particular area. See Daniel v. Hancock County School Dist., 626 F. App'x 825, 834 (11th Cir. 2015) (unpublished) (citing Gold v. City of Miami, 151 F.3d 1346, 1351 (11th Cir. 1998)).  Notice is generally recognized only where "a pattern of similar constitutional violations by untrained employees" has occurred. Daniel, 626 F. App'x at 834 (quoting Connick, 563 U.S. at 61-63).  Two isolated incidents, as alleged by Plaintiff, of correctional officers denying medical treatment based on their own untrained assessment of medical emergency, even if such actions could be considered intentional disregard

of a serious medical need, are insufficient to establish a supervisor's liability—the deprivations must be " 'obvious, flagrant, rampant and of continued duration. . . .' " Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)).  Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights."  Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1542 (11th Cir. 1994).

Because Plaintiff did not plead facts sufficient to state a claim that any violation of constitutional rights occurred, the failure to train claim against Defendant Jones must fail.

### Recommendation

It is respectfully **RECOMMENDED** that the motion to dismiss filed by Defendant Jones, ECF No. 38, be **GRANTED**, and that the motion to dismiss filed by Defendants Corizon, Cruse, and Kirkland, ECF No. 37, be **GRANTED in part** and **DENIED in part**.  The claims against Defendants Cruse and Kirkland should be dismissed, but the motion should otherwise be **DENIED**.  It is further recommended that Defendant Corizon be required to file an answer to the complaint within ten (10) days of an Order adopting

this Report and Recommendation, and that this case be **REMANDED** for

further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on August 14, 2018.

**S/ Charles A. Stampelos _____**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this
Report and Recommendation, a party may serve and file specific
written objections to these proposed findings and recommendations.
Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon
all other parties. A party may respond to another party's objections
within fourteen (14) days after being served with a copy thereof.  Fed.
R. Civ. P. 72(b)(2).  Any different deadline that may appear on the
electronic docket is for the Court's internal use only and does not
control.  If a party fails to object to the Magistrate Judge's findings or
recommendations as to any particular claim or issue contained in this
Report and Recommendation, that party waives the right to challenge
on appeal the District Court's order based on the unobjected-to
factual and legal conclusions.  See 11th Cir. Rule 3-1; 28 U.S.C. § 636.**