## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

DEMESIO E. WILSON,

      Plaintiff,

v.                                                      Case No. 4:17-cv-253-RH/MJF

CORIZON HEALTH INC,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

This prisoner civil rights case, brought under 42 U.S.C. § 1983, is before the court on Defendant Corizon Health, Inc.'s motion for summary judgment (ECF No. 68) and evidentiary materials (ECF Nos. 36, 67). Plaintiff has responded in opposition (ECF No. 71) with evidentiary materials (ECF No. 72). Defendant filed a reply. (ECF No. 73). For the reasons set forth below, Corizon's motion should be granted.[1]

### I.    Procedural History

Plaintiff, an inmate of the Florida Department of Corrections ("FDC"), is currently confined at Marion Correctional Institution in Lowell, Florida. At the time

_____

[1] The case was referred to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b); Fed R. Civ. P. 72(b).

of the events giving rise to this lawsuit, Plaintiff was confined at the Wakulla Correctional Institution. (ECF No. 1 at 2). Plaintiff's complaint names four defendants: (1) Corizon, a private company contracting with the FDC to provide medical services to inmates at Wakulla Correctional Institution; (2) V. Cruse, a medical professional employed by Corizon; (3) Julie L. Jones, the former Secretary of the FDC; and (4) A. Kirkland, a medical professional employed by Corizon. (ECF No. 1 at 1-2). Plaintiff claims that the Defendants delayed and denied proper medical treatment for his injured neck and spine, in violation of the Eighth Amendment of the United States Constitution. (*Id*. at 2-4 ¶¶ 9-18).

For relief, Plaintiff seeks a declaration that the Defendants violated his constitutional rights, an injunction, $2,500,000 in compensatory damages against each defendant jointly and severally, and $2,500,000 in punitive damages against each defendant jointly and severally. (*Id*. at 5-6 ¶¶ 26-30). He sues each defendant in their individual and official capacities. (*Id*. at 1).

On September 19, 2018, on motion of the Defendants, and upon the recommendation of Magistrate Judge Charles A. Stampelos, District Judge Robert L. Hinkle dismissed Defendants Cruse, Jones, and Kirkland. (ECF No. 52); *Wilson v. Jones*, 2018 WL 4518987, at *4-5 (N.D. Fla. Aug. 14, 2018), *adopted by* 2018 WL 4518582 (N.D. Fla. Sept. 19, 2018). Upon recommendation of Judge Stampelos, Judge Hinkle denied the motion to dismiss as to Defendant Corizon, directed the

case to proceed against Defendant Corizon, and ordered Corizon to answer Plaintiff's Complaint. (ECF No. 53). A scheduling order was issued on October 23, 2018, providing for a discovery period through January 31, 2019. (ECF No. 57). Following an extension of time to file dispositive motions, on February 28, 2019, Corizon filed its Motion for Summary Judgment. (ECF No. 68).

## II.    Factual Allegations

The facts recounted below are drawn from Plaintiff's verified complaint (ECF No. 1) and the evidence in the record (ECF Nos. 36, 67, 72).[2] Whenever the parties offer conflicting accounts, the undersigned "set[s] forth the facts, drawn from the evidence presented, in the light most favorable to the plaintiff." *Snow v. City of Citronelle*, 420 F.3d 1262, 1265 (11th Cir. 2005).

On January 16, 2014, Plaintiff fell while exiting his upper bunk, striking his neck and spine. (ECF Nos. 1 at 2; 72 at 23). Plaintiff reported the fall to the officer in charge of 'G' dorm and requested to go to emergency sick call. (ECF No. 72 at 23). The officer denied the request. (*Id.*; ECF No. 1 at 2 ¶ 10). Later that day, Plaintiff's symptoms—difficulty breathing, numbness in his arms and legs, "limping

---

[2] This statement of facts does not include any statement made by Plaintiff in his opposition to the summary judgment motion (ECF No. 71) because the response is neither verified, sworn, nor accompanied by a sworn affidavit. *See Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (district court properly declined to consider unsworn affidavit filed in support of § 1983 plaintiff's motion to alter or amend judgment); *Holloman v. Jacksonville Housing Auth.*, 2007 WL 245555 at *2 (11th Cir. 2007).

uncontrollably"—did not improve and he made a second request to go to emergency sick call. A dorm officer denied this request. (ECF Nos. 1 at 2 ¶ 11; 72 at 23). Plaintiff alleges that for four days he was denied access to the medical clinic by several dorm officers. (ECF No. 1 at 3 ¶ 12).

On January 20, 2014, after reporting severe pain in his neck, difficulty balancing, shaking of his hands, and dizziness, prison personnel allowed Plaintiff to go to sick call. Licensed practical nurse Virginia Cruse ("Cruse") examined Plaintiff. (*Id.*; ECF Nos. 36-1 at 1; 72 at 4, 23). At this visit, Plaintiff complained of tingling in his hands. (*Id.*). Cruse noted that Plaintiff was favoring his left leg and was limping. She, therefore, prescribed ibuprofen and instructed Plaintiff to return to the clinic if his symptoms worsened. (*Id.*). Cruse told Plaintiff that under FDC and Corizon's medical emergency policy, a slip and fall accident did not constitute a medical emergency. (ECF No. 72 at 23-24). Plaintiff completed a sick call form and submitted it. (*Id.*).

On January 23, 2014, Plaintiff, unable to ambulate on his own or stand for long periods of time, was taken to sick call by wheelchair where he was again seen by Cruse. (ECF Nos. 36-1 at 2-3; 72 at 5-6, 24). At this visit, Plaintiff complained of tingling in his left limbs and right hand, weakness in his left leg and right arm, and sharp pain in his lower back. (*Id.*). Cruse noted that Plaintiff's right hand was weaker than his left and that he walked with an "unsteady gait." (*Id.*). Cruse also

noted that, while explaining his symptoms, Plaintiff stood up straight, did not lose his balance, put weight on his left leg, and used his hands freely. (*Id*.). Cruse concluded that Plaintiff's motor and sensory functions were normal and that the medical examination did not support Plaintiff's alleged symptoms. (*Id*.). Cruse observed that when she denied Plaintiff's request for a walker and a low bunk assignment, he "became wobbly and walked with spastic movements." (ECF Nos. 36-1 at 4; 72 at 7). Cruse, therefore, sent Plaintiff to the infirmary for further evaluation. (*Id*.).

On January 29, 2014, Plaintiff was seen by Amy Kirkland ("Kirkland"), an advanced registered nurse practitioner ("ARNP"). (ECF Nos. 36-1 at 5; 72 at 8). Kirkland noted that Plaintiff needed help getting on the exam table and that he had fine tremors in his left hand. (*Id*.). Following consultation with a Dr. Shubert, an MRI, chest x-ray, and urine toxicology were ordered. (*Id*.). On January 30, 2014, Plaintiff was referred to Tallahassee Diagnostic Imaging "for evaluation and diagnostic plan" and to rule out a "Cerebellar Stroke." (ECF Nos. 36-1 at 6-7; 72 at 8-9). The MRI report noted "scattered areas of punctate leukomalacia primarily in subcortical white matter but also in periventricular regions," and "a prior area of subcortical ischemic change in left superior parietal lobe near vertex," but found no "acute infarct or mass." On February 4, 2014, a request for consultation was submitted. (ECF Nos. 36-1 at 8-10; 72 at 11-13).

On March 6, 2014, Plaintiff was examined by a neurologist at the Regional Medical Center ("RMC"). (ECF Nos. 36-1 at 11; 72 at 14). On that same day, based on the recommendation of the neurologist, Plaintiff was transferred to a hospital where surgeons performed "an anterior and then posterior laminectomy" for "cervical myelopathy"—compression of the spinal cord. (ECF Nos. 36-1 at 12-13; 72 at 15-16). Plaintiff was discharged to the RMC on March 19, 2014, with instructions to have his wound dressing changed daily, was permitted to perform activities to the extent he could tolerate them, and was instructed to undergo physical and occupational therapy. (*Id.*). After March 19, 2014, however, Plaintiff did not see a medical professional for any additional treatment or physical therapy. (*Id.*)

On April 22, 2014, Plaintiff was transferred to Florida State Prison-West. (ECF Nos. 36-1 at 14; 72 at 17). Plaintiff now walks "with a severe limp and numbness in [his] arms and legs." (ECF No. 72 at 25).

## III.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure states that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail on a motion for summary judgment, the moving party must show that the nonmoving party has insufficient evidence to support his case or that an affirmative defense precludes the nonmoving party from prevailing at

trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552-53 (1986). If the moving party successfully negates an essential element of the nonmoving party's case, the burden shifts to the nonmoving party to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.*

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510 (1986) (emphasis in original). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *Hickson Corp.*, 357 F.3d at 1259; *see Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995) ("The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."). The nonmoving party must show more than the existence of a "metaphysical doubt" regarding the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Evidence presented by the nonmoving party in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in

the light most favorable to him. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970).

## IV.    Discussion

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must put forth sufficient evidence demonstrating that: (1) a defendant deprived him of a right secured under the United States Constitution or federal law; and (2) such deprivation occurred under color of state law. *Lividas v. Bradshaw*, 512 U.S. 107, 132, 114 S. Ct. 2068, 2083 (1994); *Adickes*, 398 U.S. at 150, 90 S. Ct. at 1604; *Stephens v. DeGiovanni*, 852 F.3d 1298, 1314 (11th Cir. 2017). A prisoner may sue a governmental entity that has a custom or policy that constituted deliberate indifference to a constitutional right or caused a violation of that right. *See McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

Although Corizon is not a governmental entity, when a function which is traditionally the exclusive prerogative of the state is performed by a private entity, that private entity may be held liable under § 1983. *See Fields v. Corizon Health, Inc.,* 490 F. App'x 174, 181-82 (11th Cir. 2012); *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997). FDC contracted with Corizon to have Corizon provide medical services to inmates in Florida prisons. When a private entity contracts with the state "to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state and becomes the functional equivalent of the

municipality under section 1983." *Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (citation and internal quotation omitted); *Ancata v. Prison Health Servs.*, 769 F.2d 700, 703 (11th Cir. 1985).

Beyond showing that the private entity essentially was a state actor, a plaintiff also must show that: (1) his constitutional rights were violated; (2) the private entity had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) the policy or custom caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004); *Buckner*, 116 F.3d at 453 (noting that "the *Monell* policy or custom requirement applies in suits against private entities performing functions traditionally within the exclusive prerogative of the state, such as the provision of medical care to inmates"). Thus, for Corizon to be liable, Plaintiff must identify a policy or practice which was "the moving force" behind injury or harm to Plaintiff. *See Fields*, 490 F. App'x at 183-85. That is, Plaintiff must show "a direct causal link between the policy or custom and the alleged constitutional deprivation." *Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203 (1989).

"'[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.'" *Helling v. McKinney*, 509 U.S. 25, 32, 113 S. Ct. 2475, 2480 (1993) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Serv.*, 489 U.S. 189, 199-200, 109 S. Ct. 998, 1005-06 (1989)). Because an

inmate "must rely on prison authorities to treat his medical needs," prison officials have an "obligation to provide medical care for those whom it is punishing by incarceration," and failure to meet that obligation can constitute a violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290 (1976).

To violate the Eighth Amendment's duty to provide medical care, an "express intent to inflict unnecessary pain is not required." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084 (1986). Rather, to prevail on an Eighth Amendment claim for providing inadequate medical care, a plaintiff must show that a defendant showed "deliberate indifference" to his "serious medical needs." *Estelle*, 429 U.S. at 104, 97 S. Ct. at 291; *see Hudson v. McMillian*, 503 U.S. 1, 5, 112 S. Ct. 995, 998 (1992) ("[T]he appropriate inquiry when an inmate alleges that that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'"). Thus, courts "considering a prisoner's claim must ask both if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson*, 503 U.S. at 7, 112 S. Ct. at 999 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 303, 111 S. Ct. 2321, 2324, 2326 (1991)). This includes "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow*, 681 F.3d at 985; *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000).

Accordingly, to prevail on an Eighth Amendment claim of deliberate indifference to a serious medical need, a plaintiff must show:

(1) he had a serious medical need;

(2) a defendant was deliberately indifferent to that need; and

(3) there is a causal connection between the defendant's act or omission and the constitutional deprivation. *Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016); *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009); *Rodriguez v. Sec'y, Dep't of Corr.*, 508 F.3d 611, 625 (11th Cir. 2007); *Taylor*, 221 F.3d at 1258.

### A.   <u>Failure to Demonstrate Deliberate Indifference to a Medical Need</u>

Plaintiff has failed to create a genuine issue of material fact regarding Corizon's alleged deliberate indifference to Plaintiff's serious medical needs. The record clearly demonstrates that Corizon employees provided medical care to Plaintiff upon receiving his complaints. Specifically, Plaintiff was injured on January 16, 2014. At least two dorm officers—who were not affiliated with Corizon—refused to allow Plaintiff access to Corizon medical personnel until January 20, 2014. (ECF Nos. 1 at 2 ¶¶ 10-12; 72 at 23). Thus, according to Plaintiff's allegations, the failure to receive medical treatment between January 16 and January 20 was caused by FDC personnel, not Corizon. (ECF No. 1 at 2; ECF No. 72 at 23).

On January 20, 2014, Nurse Cruse examined Plaintiff. (ECF Nos. 1 at 3 ¶¶ 12-13; 36-1 at 1; 72 at 4 ). Cruse noted Plaintiff's temperature, pulse, respirations, blood pressure, and oxygen saturation. (ECF No. 72 at 4.). Plaintiff reported a pain level of "zero," had not experienced a loss of consciousness, and he was alert and oriented. (*Id.*) Although Plaintiff's left leg had a limp and he reported numbness or tingling in his left hand, his face did not droop. (*Id.*). Cruse dispensed ibuprofen and told Plaintiff to return to sick call if his symptoms did not improve. (*Id.*).

Plaintiff complains that the medical examination was insufficiently thorough, but a mere disagreement as to the type of medical examination provided does not establish deliberate indifference. (ECF No. 1 at 3 ¶¶ 12-13); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Hamm v. DeKalb Cty.,* 774 F.2d 1567, 1575 (11th Cir. 1985). Indeed, even malpractice or a negligently deficient examination is insufficient to state a claim for deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106, 97 S. Ct. at 292 ("Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) ("Mere incidents of negligence or malpractice do not rise to the level of constitutional violations."). Furthermore, Plaintiff has not shown that Cruse knew that Plaintiff had a spinal injury or a sufficiently serious medical condition to warrant additional examination or treatment. Deliberate

indifference requires actual knowledge that a plaintiff had a serious medical need, not simply knowledge of symptoms. *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that deliberate indifference requires that a defendant have actual knowledge of a serious condition, not just knowledge of its symptoms); *see also Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989) (noting that "knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference").

On January 23, 2014, when Plaintiff's medical needs persisted, Cruse again examined Plaintiff. (ECF Nos. 36-1 at 2-4; 72 at 5-7, 24). Cruse noted Plaintiff's temperature, pulse, respirations, blood pressure, and oxygen saturation. (*Id*.). Plaintiff again reported a pain level of "zero." (*Id*.). Plaintiff also reported that he had not lost consciousness, and he was alert and oriented, and his face did not droop. (*Id*.). Cruse noted that Plaintiff's right hand was weaker than his left, he had numbness on his left side, and an "unsteady gait." (*Id*.). Based on these symptoms, Cruse sent Plaintiff to the infirmary for further evaluation. (ECF Nos. 36-1 at 3-4; 72 at 6-7).

Also on January 23, 2014, ARNP Kirkland examined Plaintiff and was the person who actually admitted Plaintiff to the infirmary. (ECF Nos. 1 at 3; 36-1 at 1-4; 72 at 4-7, 23). Plaintiff remained in the infirmary under medical care until January 29, 2014. (ECF No. 1 at 3). On January 29, 2014, Kirkland again examined Plaintiff

in the infirmary. (ECF Nos. 36-1 at 5; 72 at 8). Kirkland then consulted with a Dr. Shubert, which resulted in Plaintiff undergoing magnetic resonance imaging ("MRI"), a chest x-ray, and urine toxicological analysis. (*Id.*). Plaintiff concedes that this was done in an effort to determine the cause of his symptoms. (ECF No. 1 at 3).

While Plaintiff was not referred for an MRI until his third medical exam, there is nothing in the record that indicates that Corizon knew that Plaintiff had suffered a spinal injury or otherwise had a serious medical condition. The record also does not show that Corizon staff delayed his care due to a policy or custom of denying an inmate access to a specialist unless he had submitted three sick call requests. Rather, the record shows that Corizon personnel examined Plaintiff and, based on their observations and findings, formulated treatment plans and made recommendations and referrals. This does not create a genuine issue regarding deliberate indifference to a serious medical need.

Furthermore, on January 31, 2014, Plaintiff was transported to a private MRI center in Tallahassee, Florida, where magnetic resonance imaging technology was used to examine Plaintiff. (ECF Nos. 1 at 3 ¶ 16; 36-1 at 7-8; 72 at 10-11). The MRI report indicated no remarkable findings:

> Findings: There is no intracranial mass or hydrocephalus. There is no abnormal diffusion. There are scattered areas of punctate leukomalacia primarily in the subcortical white matter, but also in the periventricular region. These areas do not demonstrate diffusion restriction. There is a prior area of subcortical ischemic changes in the left superior parietal lobe near the vertex. There is no intra cranial mass or hemorrhage. No

abnormal flow voids are seen. No extra-axial fluid collections are seen. The orbits and sella have an unremarkable appearance. Impression: Scattered chronic ischemic white matter changes. These may reflect small vessel disease. Patients with migraine headache syndromes can exhibit similar foci. No acute infarct or mass.

(ECF Nos. 36-1 at 8; 72 at 11).

A deliberately indifferent entity could have relied on the magnetic resonance imaging report to refuse additional treatment. Instead, on February 4, 2014, Kirkland requested a neurology consultation. (ECF Nos. 36-1 at 9; 72 at 12). The request noted that Plaintiff had a recent onset of tingling and weakness in his arms and legs. (*Id.*). The request reported physical findings of "increasing ataxia" and that Plaintiff now needed a wheelchair for transfer. (*Id.*). The request referenced the MRI report and noted that Plaintiff had a history of a fall in July, 2013, that had not resulted in a loss of consciousness, but had caused a minor laceration to the top of his head. (*Id.*). The record indicates that Kirkland's request went through several levels of review, but Corizon personnel approved it on February 5, 2014. (ECF Nos. 36-1 at 10; 72 at 13). That same day, Plaintiff was transferred to the RMC. (ECF No. 1 at 4 ¶ 17); *see also* (ECF Nos. 36-1 at 11; 72 at 14) (showing admit date on patient's record ID).

On March 6, 2014, a neurologist examined Plaintiff and noted "spinal cord syndrome central core syndrome vis compression myelopathy until proven otherwise." (ECF Nos. 36-1 at 11; 72 at 14). The neurologist recommended that

Plaintiff immediately be transferred to "MMC Hospital" for an emergency MRI of the cervical spine and a neurosurgical consult. (*Id.*). On that same day, consistent with the neurologist's recommendation, Plaintiff was admitted to Memorial Hospital Jacksonville, where "an anterior and then posterior laminectomy" was performed for "severe canal stenosis in C4-C5." (ECF Nos. 36-1 at 12-13; 72 at 15-16). Following a postoperative recovery period, Plaintiff was discharged from the hospital on March 19, 2014, and transferred to the RMC. (*Id.*).

Thus, the record demonstrates that Corizon personnel administered medical treatment and promptly attempted to diagnose the cause of Plaintiff's symptoms. Corizon personnel repeatedly provided medical care to Plaintiff. As Magistrate Judge Charles Stampelos and the District Court previously noted, the record demonstrates that Corizon's employees were not deliberately indifferent to Plaintiff's serious medical needs. *See Wilson v. Jones*, 2018 WL 4518987, at *4-5 (N.D. Fla. Aug. 14, 2018), *adopted by* 2018 WL 4518582 (N.D. Fla. Sept. 19, 2018).

Because Plaintiff has failed to show that anyone was deliberately indifferent to his serious medical needs, it goes without saying that he has not created a genuine issue whether Corizon's customs and policies resulted in deliberate indifference to Plaintiff's serious medical needs. *Palermo v. Corr. Med. Servs. Inc.*, 133 F. Supp.2d 1348, 1363 (S.D. Fla. 2001) ("It almost goes without saying that there can be no custom of deliberate indifference to a Plaintiff's Constitutional rights for those

Plaintiffs who have not suffered a Constitutional tort."). Because Corizon's treatment of Plaintiff did not violate the Eighth Amendment, Corizon cannot be held liable for a claimed Eight Amendment violation, regardless of any custom or policy it had. *See Ross v. Corizon Medical Services*, 700 F. App'x 914, 917-18 (11th Cir. 2017) (holding that because the plaintiff failed to demonstrate a constitutional violation "by extension, he cannot establish that Corizon participated in or caused such a violation") (citation omitted); *Owen v. Corizon Health Inc.*, 703 F. App'x 844, 849 (11th Cir. 2017) (holding that the district court properly granted summary judgment for Corizon because its policy could not have caused a constitutional violation that never occurred); *Gish v. Thomas*, 516 F.3d 952, 955 (11th Cir. 2008) (holding that a custom or policy is irrelevant when there was no underlying constitutional violation that purportedly was caused by the custom or policy).

## B.    <u>Failure to Show that Corizon Had an Unlawful Policy or Custom</u>

There is a second independent reason to grant Corizon's motion for summary judgment. Plaintiff also failed to create a genuine issue regarding his allegation that Corizon's policy caused his treatment to be delayed.

As noted above, to survive a motion for summary judgment, Plaintiff must show that there is sufficient evidence demonstrating that Corizon's policy or custom caused—that is, was the moving force behind—the constitutional violation. *Harris*, 489 U.S. at 385, 109 S. Ct. at 1203; *McDowell*, 392 F.3d at 1289; *Buckner*, 116 F.3d

at 453; *Fields*, 490 F. App'x. at 183-85. Plaintiff alleges that Corizon had a policy of denying an inmate access to a medical specialist until the inmate had submitted three sick call requests. (ECF Nos. 1 at 3; 72 at 25). According to Plaintiff, this policy caused a delay in Plaintiff's access to medical care, which purportedly complicated the injury to his spinal cord resulting in his walking with a limp and continued numbness in his legs and arms. (ECF Nos. 1 at 3; 72 at 25). However, Plaintiff misconstrues the plain language of the referenced policy, provides no evidence that this policy caused the delay in his treatment, and provides no evidence to support his contention that delay in treatment complicated his injury.

"An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1182-84, 1188 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508 (2002); *see Thomas v. City of Jacksonville*, 731 F. App'x 877, 881 (11th Cir. 2018) (noting that the plaintiff failed to include any evidence that any delay produced negative consequences); *Jackson v. Riebold*, 815 F.3d 1114, 1119-20 (8th Cir. 2016) (holding that to prevail on a claim that delay in medical care constituted cruel and unusual punishment, the plaintiff must put forth medical evidence to establish that a delay in medical treatment had a detrimental effect); *Williams v. Liefer*, 491 F.3d

710, 715 (7th Cir. 2007) ("[A] plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental."); *Dulany v. Carnahan*, 132 F.3d 1234, 1243 (8th Cir. 1997) (holding that summary judgment for defendants was warranted when the plaintiffs failed to submit medical evidence indicating that a delay in treatment resulted in any adverse effect); *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1991) (holding that summary judgment was proper when there was "nothing in the record to suggest that" the inmate's "injuries were exacerbated in the slightest by the delay in providing treatment").

The undersigned reviewed the medical records submitted by Plaintiff and found no reference to any connection between a delay in care and Plaintiff's injury or his continuing symptoms. Notably, the neurology consultant's report and the surgeon's discharge summary do not state that any delay had any effect on Plaintiff's ultimate diagnosis and outcome. (ECF Nos. 36-1 at 11-12; 72 at 14-15). Plaintiff merely claims that a doctor told him that his "complications were directly related to the absence in Emergency Care." (ECF No. 72 at 25). Despite having access to his medical records, Plaintiff does not provide the name of the doctor nor the date or place of the purported conversation. Nor, despite a three-month discovery period, did Plaintiff attempt to obtain an affidavit from that doctor. Thus, there is simply no medical evidence in the record to corroborate Plaintiff's hearsay statement that the

delay in receiving medical treatment resulted in harm to Plaintiff or exacerbated his condition.

With respect to Corizon's alleged policy, it is worth noting that the policy about which Plaintiff complains was not formulated by Corizon. Rather, it is a policy set by the FDC. Regardless, the relevant provision states: "Inmates who present to sick call three times with the same complaint as unresolved will be referred to a clinician, *but may be referred prior to that as determined by the assessor.*" *Sick Call Process and Emergencies*, FDC Procedure No. 403.006 (Aug. 22, 2018) (emphasis added). (ECF No. 72 at 30). By its own terms, therefore, this policy allows the nurse or "assessor" to refer inmates to clinicians regardless of whether an inmate has presented to sick call three times. Plaintiff has not submitted evidence to show how this policy caused him harm insofar as it did not preclude the nurse from referring him to a physician whenever she believed that was necessary. That is, Plaintiff has not created a genuine issue regarding his claim that this policy caused Corizon to delay its treatment of Plaintiff.

Moreover, in Kirkland's affidavit, she stated that, under the FDC policy, she could have referred Plaintiff to a specialist if she believed it was necessary, and that she ultimately referred Plaintiff to a neurologist when she believed it was warranted. (ECF No. 67-1 at 3 ¶ 3). Thus, neither the text of the FDC policy nor its application supports Plaintiff's claim that the inmates suffering from substantial injuries or

illnesses could be referred to medical practitioners only after three sick calls. (ECF No. 67-1 ¶¶ 2-3).

Yet another part of the policy required medical personnel to address all inmate complaints at sick call or at follow-up appointments. (ECF No. 72 at 30). It is worth noting that the "three sick calls" policy is actually a command to prison personnel that inmates whose symptoms persisted after three trips to sick call *had to be referred to a clinician*. (ECF No. 72 at 30). Thus, contrary to Plaintiff's contention that this policy caused delay in receiving medical care, if followed, the policy would ensure that inmates with a recurring problem promptly would be referred to a clinician. If followed, this policy would prevent Corizon and FDC from ignoring recurring medical conditions. Additionally, as noted above, the policy gives nurses discretion to refer inmates to a clinician whenever necessary. (*Id.*; ECF No. 67 at ¶ 3). A policy that (1) requires prison personnel to address persisting medical needs after three sick call and (2) allows nurses to refer to a clinician prior to three sick calls if the assessor believes it is necessary based on their medical opinion is not a manifestation of deliberate indifference to those medical needs. *See Mandel v. Doe*, 888 F.2d 783, 791 (11th Cir. 1989).

Plaintiff, therefore, has failed to create a genuine issue of material fact regarding deliberate indifference to his serious medical needs. He has not put forth sufficient evidence indicating that Corizon denied or delayed Plaintiff's medical

care. He also has failed to create a genuine issue regarding any Corizon or FDC policy causing deliberate indifference to serious medical needs. Corizon, therefore, is entitled to judgment as a matter of law.

## V.    Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.    Defendant Corizon's Motion for Summary Judgment (ECF No. 68) be

   **GRANTED.**

2.    The clerk of the court be directed to enter judgment in favor of

   Defendant and close the case file.

At Panama City Beach, Florida, this 9th day of July, 2019.

   /s/ *Michael J. Frank*
   **Michael J. Frank**
   **United States Magistrate Judge**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**